Woodruff v. Morristown Institution for Savings.

GEORGE D. WOODRUFF et al.

v.

THE MORRISTOWN INSTITUTION FOR SAVINGS et al.

1. In the construction of a release of a mortgage, the question is, not what did the parties mean to do, but what have they done by apt and proper words.

2. Where a recital is followed by general words, the general words will be held to be limited or qualified by the recital.

3. Except under very extraordinary circumstances, a court of equity will not lend its assistance to reform a voluntary deed, or to enforce the specific performance of a voluntary contract.

4. It is an established rule that the assignee of a mortgage takes it subject to all the equities which the mortgagor may claim against it, but free from secret equities existing in favor of third persons.

5. In this state, it is provided by statute that in a suit by an assignee of a mortgage, all just set-offs and other defences shall be allowed against him which would have been allowed if his assignor had brought the action. *Rev. 708 § 31.*

6. A mortgagor may, by concealing his equities, or misleading the assignee, place himself in a position where justice will be defeated if he is allowed to set up, against the assignee, an equity on which he would be entitled to prevail in a suit by his mortgagee. Where the conduct of a mortgagor leads to such a result, courts of equity hold that he is estopped.

7. Where one person, by either words or conduct, induces another to believe that he may safely purchase certain property, or take a certain security, and he subsequently, relying on such representation, acquires the property or security, the former will never be permitted, in a court of equity, to overthrow the title so acquired.

On final hearing on bill, answer and proofs taken before a master.

*Mr. Philemon Woodruff*, for complainants.

*Mr. S. H. Little*, for defendants.

Van Fleet, V. C.

This action is brought to foreclose three mortgages, all made by Benjamin S. Dean to William Littell. The first is dated June 7th, 1859, and was made to secure $500; the other two were given for $700 each, and bear date, the first, January 7th, 1861, and the second, August 15th, 1861. They originally embraced the same lands, consisting of two tracts, one containing forty-nine and fifteen-hundredths acres, and the other four and seventy-six hundredths acres. On the 23d of April, 1869, Mr. Littell, the mortgagee, at the instance of Mr. Dean, the mortgagor, executed an instrument in writing, by which he intended to release to Mr. Dean the tract of four and seventy-six hundredths acres from the lien of all three of his mortgages. Previous to the execution of the release, to wit, on the 1st of February, 1869, Mr. Dean conveyed a part of the tract of four and seventy-six hundredths acres to Mrs. Margaret L. Woodruff, and she, on the 1st of June, 1870, executed a mortgage thereon for $1,000 to the Morristown Institution for Savings. On the residue of this tract, being the part still held by Mr. Dean, he executed a mortgage to the same institution, on the 15th of July, 1870, for $2,000. Both mortgages were received by the corporate defendants under an assurance that the mortgaged premises were free from any prior encumbrance. On the 1st of May, 1878, Mr. Littell assigned his three mortgages to the complainants.

The evidence makes it entirely clear that they are *bona fide* holders for full value.

The release executed by Mr. Littell to Mr. Dean, after stating the date, and names and residences of the parties, recites—

"That whereas, Benjamin S. Dean, by an indenture of mortgage, dated the seventh and fifteenth day of June and August, in the years of our Lord one thousand eight hundred and fifty-nine, and sixty-one, for the consideration therein mentioned, and to secure the payment of the money therein specified, did convey certain lands and tenements, of which the lands hereinafter described are part, unto William Littell; and whereas, the said William Littell, at the request of said Dean, has agreed to give up and surrender the lands hereinafter described unto the said Dean, and to hold and retain the residue of the mortgaged lands as security for the money remaining due on the said mortgages."

It then declares—

"Now this indenture witnesseth, that the said Littell, in pursuance of the said agreement, and in consideration of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, has granted, released, quit-claimed and set over, and by these presents does grant, release, quit-claim and set over unto the said Dean, all that part of said mortgaged lands hereinafter particularly described."

And then describes the tract of four and seventy-six hundredths acres. The question presented for decision, it will be perceived, is, whether or not the complainants are, in equity, under their second mortgage, entitled to a lien, as against the Morristown Institution for Savings, on the tract of four and seventy-six hundredths acres.

The construction of the release, if tested by its words, is free from doubt. The question in such cases is, not what did the parties mean to do, but what have they done by apt and proper words. The whole instrument must be considered, and, if possible, effect must be given to every phrase and word. Where a recital is followed by general words, the general words will be held to be limited or qualified by the recital, in obedience to the maxim, *verba generalia, restringuntur ad habilitatem rei vel personam. Broom's Max. 501.* The recitals in this case, though

expressed in language awkwardly arranged, plainly say that Littell holds two mortgages on the tract of four and seventy-six hundredths acres, one dated June 7th, 1859, and the other August 15th, 1861, which he has agreed to release, and then the release declares that to carry that agreement into effect, its words being, " in pursuance of the said agreement," this indenture witnesseth that he has and does grant, release &c. Construed by its words alone, and seeing nothing and knowing nothing concerning the purposes and intentions of the parties except what appears on the face of the paper, it is obvious that it must be held that the release did not affect or discharge the lien of the mortgage not mentioned in it.

This disposes of the case on the issue made by the pleadings actually filed. The defendants are before the court by answer alone, and could not, therefore, without new pleadings, even if a proper case existed, have the release reformed. But, on the argument, it was agreed by counsel, in order that the real merits of the controversy might be decided, that the defendant's answer should also be regarded as a cross-bill, with a proper prayer for a reformation of the release. The question presented by this arrangement is, are the defendants entitled to a decree reforming the release, so as to make it a release of all three mortgages, against the complainants, who acquired title to their mortgages in good faith and for full value, after the release was made a matter of public record?

I think it may well be doubted whether the instrument sought to be reformed can properly be regarded as falling within the class over which a court of equity may exercise its reformatory power. The release was a pure act of grace on the part of Mr. Littell. He received no consideration for making it, and was under no legal obligation to give it. He executed it as a favor to Mr. Dean. The rule seems to be settled that, except under very extraordinary circumstances, a court of equity will not lend its assistance to reform a voluntary deed, or to enforce the specific performance of a voluntary contract. *Lister* v. *Hodgson,* *L. R. (4 Eq. Cas.) 30 ; Turner* v. *Collins, L. R. (7 Ch. App.) 342; Groves* v. *Groves, 3 You. & Jer. 163 ; Phillipson* v. *Kerry, 32*

*Beav. 628; Broom* v. *Kennedy, 9 Jur.* (*N. S.*) *141, 33 Beav. 133; Fry on Spec. Perf. 71; Story's Eq. Jur.* § *787; Mulock* v. *Mulock, 4 Stew. Eq. 602.* But it is not necessary to decide the case on this ground.

The corporate defendants sit in Mr. Dean's seat. They claim under him, and have a right to urge his equities, but must bear his burdens and submit to the infirmities of his case. It is also true that the complainants took the mortgages subject to any defence or equity which Mr. Dean, or those who have succeeded to his rights, could urge against them, the established rule being that the assignee of a mortgage takes it subject to all the equities which the mortgagor may claim against it, but free from secret equities existing in favor of third persons. *Losey* v. *Simpson, 3 Stock. 254; Woodruff* v. *Depue, 1 McCart. 175; Starr* v. *Haskins, 11 C. E. Gr. 414; Putnam* v. *Clark, 2 Stew. Eq. 415; Vredenburgh* v. *Burnet, 4 Stew. Eq. 231.* An assignee takes subject to the mortgagor's equities, whether they are open or secret. *Conover* v. *Van Mater, 3 C. E. Gr. 484; Atwater* v. *Underhill, 7 C. E. Gr. 606.* The doctrine on this subject was stated with striking brevity by Lord Thurlow:

" A purchaser of a chose in action must always abide by the case of the person from whom he buys; that I take to be a universal rule." *Davies* v. *Austen, 1 Ves. jun. 247.*

A different rule, it is said, should prevail where a mortgage is given to secure the payment of a negotiable promissory note, and the note and mortgage are transferred to a *bona fide* purchaser, before the maturity of the note. In such a case, it has been adjudged by the supreme court of the United States that the assignee has a right to recover the full amount of the note, regardless of the equities existing between mortgagor and mortgagee. The reason assigned for this distinction is, that in such a transaction the note, in law as well as reason, is entitled to be regarded as the principal contract, and the mortgage merely as an accessory or security for the debt evidenced by the note, and consequently that unless the note is treated as possessing the immunity from secret defences which commercial paper is, by law,

Woodruff *v.* Morristown Institution for Savings.

entitled to, the assignee is deprived of his lawful rights under his contract. *Carpenter* v. *Longan, 16 Wall. 271.* Other tribunals have declared that the fact that the principal contract was a negotiable promissory note, did not entitle the assignee to exemption from the ordinary rule. *Olds* v. *Cummings, 31 Ill. 188; Walker* v. *Dement, 42 Ill. 272; Baily* v. *Smith, 14 Ohio 396.* In this state, it is provided by statute that in a suit by an assignee of a mortgage, all just set-offs and other defences shall be allowed against him which would have been allowed if his assignor had brought the action. *Rev. 708 § 31.*

The rights of the parties to this controversy must be measured and determined by the rule first stated. That places the present contestants in the same relative position before the court that the original parties would occupy if the one was here asking to foreclose, and the other to reform, and their equities must be gauged by this rule, unless it appears that the complainants have, by some word or act of the mortgagor, been raised to a higher position than that occupied by their assignor. There is no dispute that the release was intended to remove the lien of all three of the mortgages from the tract of four and seventy-six hundredths acres. Mr. Littell swears that he executed it for that purpose. The clear weight of the evidence renders it also entirely clear that the complainants acquired title to the mortgages without notice, either actual or constructive, that the release was defective in any respect, or that it was not, in every particular, just what the parties intended it should be. Now, while it is true that the title of the assignee of a mortgage is always subject to the equities of the mortgagor, it is also true that the mortgagor may, by concealing his equities or misleading the assignee, place himself in a position where justice will be defeated if he is allowed to set up, against the assignee, an equity on which he would be entitled to prevail in a suit by his mortgagee. Where the conduct of a mortgagor leads to such a result, courts of equity hold that he is estopped. The case in which this doctrine is, perhaps, most frequently applied, is where the mortgagor induces the assignee to foreclose, upon a representation that the mortgage is a valid security, and not subject to any defence. *Diercks* v. *Kennedy, 1*

*C. E. Gr. 210; Bush* v. *Cushman, 12 C. E. Gr. 131.* The case under consideration falls, I think, fairly within this principle.

The release in question was drawn pursuant to Mr. Dean's direction. If it did not fully and truly express the intention of the parties, the fault is his. Mr. Littell had nothing to do with its preparation; he simply executed it on presentation. After it was executed, Mr. Dean accepted it and placed it on record. It was recorded May 21st, 1869. He is chargeable with notice of its contents. He must be held responsible for having made it a matter of public record, for all purposes of notice and caution, after he knew its contents. The corporate defendants are also chargeable with constructive notice of its contents. It had been on record for more than a year when they acquired their first lien. Both they and Mr. Dean allowed it to stand unchallenged for more than seven years before the complainants became the owners of the mortgage in question. This long delay constituted something more than laches; it amounted to acquiescence. Before purchasing, the complainants examined the records. They were not bound to go any further. They had a right to rely on what they found there, and to assume that the release accurately defined and settled the rights of the parties.

These facts are sufficient, I think, to create an estoppel against Mr. Dean; and if he is estopped, so are the corporate defendants, for their title to a reformation of the release is derived solely through him. To constitute an estoppel *in pais*, the defendant must have done an act, or made an admission, the natural effect of which was to influence the conduct of the complainant, and which has induced him to change his position or condition, so that, if the defendant is afterwards permitted to deny the truth of his conduct or his words, the complainant must suffer injury. *Den* v. *Baldwin, 1 Zab. 403; Martin* v. *Righter, 2 Stock. 526; Phillipsburg Bank* v. *Fulmer, 2 Vr. 55; Mutual Life Ins. Co. of N. Y.* v. *Norris, 4 Stew. Eq. 585.* No argument is required to vindicate the application of this principle to the case in hand. Where one person, by either words or conduct, induces another to believe that he may safely purchase certain property, or take a certain security, and he subsequently

relying on such representation, acquires the property or security, the former will never be permitted, in a court of equity, to overthrow the title so acquired.  *Morris Canal and Banking Co.* v. *Lewis, 1 Beas. 332 ; Brinkerhoff* v. *Brinkerhoff, 8 C. E. Gr. 477.*

My conclusion is, that the defendants are not entitled to a reformation of the release, and that the complainant's second mortgage is a valid lien on the four and seventy-six hundredths acre tract.