Susanna Papsco et al., complainants,

*v.*

Michael Novak et al., defendants.

[Decided June 8th, 1923.]

1. A court of equity may declare a deed which is absolute on its face to be a mortgage, and the facts may be proved by parole evidence.

2. If the intention of the parties was that the instrument should constitute security for the payment of money or the performance or non-performance of any other act, then it is deemed a mortgage; but if a real sale was intended, then it takes effect according to its terms, even though a contemporaneous right or privilege to purchase back the property was contracted for by the vendor.

3. Evidence examined, and *held* that the deed in question was in equity a mortgage.

On final hearing.

*Mr. William Greenfield,* for the complainants.

*Messrs. Riker & Riker (Mr. Andrew Van Blarcom),* for the defendants.

BACKES, V. C.

This bill is filed to have ·a deed, absolute on its face, de-· clared to be a mortgage, and to ·redeem. The complainants, two elderly women, were in financial distress and foreclosure proceedings were threatening when they applied to Novak for assistance in January, 1916. They had just previously obtained small emergency loans from a friend, Carl Kasimer, to whom they had conveyed the premises here involved, and other property, as security. Kasimer, at complainants' request, conveyed to Novak. Novak's proposition to the complainants was, as I find the fact to be, that he would pay the building loan arrearages on the first mortgage, the taxes then due, and other liens, if any, take up the second mortgage then about to be foreclosed, and hold and manage the property for from two to five years, and return it to them upon repayment, within that time, of his outlay, six per cent. interest and $200 for his services, and upon default it was to belong to him.

The complainants offered to redeem within the time, but Novak refused to re-convey, setting up then, as he does now, that he purchased the property. I have little faith in Novak and his testimony The complainants were trying to save, not sell, their property. Nothing was paid to them by Novak for their equity. His claim that they feared a deficiency judgment by which the rest of their property might be taken from them, and that relieving them of this possible misfortune formed the consideration, is, in my opinion, pure fiction and of recent origin. Nothing in the case lends support to Novak's disingenuous assertion. The attending circumstances and the decided weight of the evidence is clearly in favor of the charge that the property was pledged as security, with the further condition that it was irredeemable

after five years. The transaction has the well-recognized earmarks of a mortgage. The right of a court of equity to declare a deed or bill of sale, which is absolute on its face, to be a mortgage, is clear, as is also the competency of parole evidence to prove the fact. The question turns upon the actual intention of the parties at the time of the transaction. If that intention was that the instrument should constitute security for the payment of money or the performance or nonperformance of any other act, then it is deemed a mortgage; but if a real sale was intended then it takes effect according to its terms, even though a contemporaneous right or privilege to purchase back the property sold was contracted for by the vendor. *Cake* v. *Shull, 45 N. J. Eq. 208.* See. also, *Crane* v. *Bonnell, 2 N. J. Eq. 264; Lokerson* v. *Stillwell, 13 N. J. Eq. 357; Hogan* v. *Jaques, 19 N. J. Eq. 123; Phillips* v. *Hulsizer, 20 N. J. Eq. 308; Sweet* v. *Parker, 22 N. J. Eq. 453; Winter* v. *Earl, 52 N. J. Eq. 52.*

A decree will be advised directing Novak to convey to the complainants upon payment of what is due him, to be ascertained by an accounting before a master.

Novak's contention that he should not be called upon to account for the rents, issues and profits during the time he held the property because it was agreed that they were to belong to him, is characteristic. He rests his claim upon an allegation in the original bill (the bill was twice amended) that he was to have the usufruct. My earlier impression was that I was bound by the allegation, but upon further reflection I have concluded that that is not so. The allegations that bind as pleadings are those contained in the second amended bill, the issues of which were tried and now decided. The disserving allegation of the original bill is, however, to be considered as a circumstance in weighing the evidence and determining where the truth lies. When the case was first opened the bill was found to be defective as to parties and it was ordered amended. The amended bill, like the original, sounded in trust more than in mortgage and at the conclusion of the hearing the complainants were directed to again

amend so as to conform to the proofs, that the deed was given as a mortgage, and also to overcome the position taken by Novak's counsel that the property was held in trust, and that the trust was uninforceable under the statute of frauds. Looking upon the disserving statement merely as evidence in the cause it does not strike me as of importance. Novak is not to be permitted to avail himself of it because of his utter repudiation of his deed as a mortgage, and it ought not to be held against the complainants in view of their testimony, and that of others, as to what the real arrangement was, because of their ignorance and illiteracy and inability to express themselves intelligently in our language. If the solicitor who drew the pleadings had as much difficulty in understanding the complainants as I had at the hearing, it reasonably can be attributed to his misunderstanding. My notion is that nothing was said in the negotiations about what was to become of the rents, issues and profits, and indeed I think Novak gave that little concern, and it concerned him little. The discussion of the terms on which he was to hold was so much idle talk to him. He never expected the complainants to be in a position to repay, and title meant ownership to him from the start. He is not inexperienced in helping his unfortunate and confiding fellow countrymen out of their troubles, and he helped these lone women in the hope and expectation that the days of their need would outlast the right to redeem.