This bill is filed by the complainants as executors and trustees under the last will and testament of Walter F. Harris to obtain the instructions of this court as to the validity of the claims of two of the children of the decedent to certain properties — one in the town of Westfield and one in the borough of Madison — the legal title to which was in decedent's name at the time of his death. The two defendants, Edith C. Preston and Lewis F. Harris, answered and filed counter-claims, asking for a decision directing complainants to convey the properties to them respectively. *Page 77 
By his last will and testament the testator bequeathed his residuary estate in trust, the income to be paid to his widow and children for life, the remainder to the issue of his children. There are seventeen remaindermen, all minors. The life tenants, that is, the widow and children, do not contest the claims.
The guardian appointed by the court for the infant remaindermen has filed a memorandum. At the hearing objection was made to any evidence as to conversations between the parties to the litigation and the deceased. In the brief filed by the guardian, however, he states that he has concluded that the witnesses who have given their testimony were competent to give it as it now appears on the record. Therefore, it is unnecessary to discuss in detail the arguments of counsel for the defendants on this point except to say that I agree with the legal proposition he has advanced that the testimony as taken is, under the cases, admissible.
It appears that the decedent gave to all his children homes, with the exception of Mrs. Ruth Work, who told decedent that she did not wish such a gift as she was well provided for by her husband.
The facts as to defendant Edith C. Preston are that Mrs. Preston for a time lived in Los Angeles in the house provided by her father. Later she moved to this state and selected the Westfield property as her home. Decedent paid for it and took title in his own name. The proceeds from the sale of the California property were applied to the purchase price of the Westfield property and a mortgage for the balance was given by decedent. This mortgage he afterward paid off. He paid the taxes on her home as he did on those of his other children to whom he had made outright gifts. Mrs. Preston executed a lease on this house in her own name and received the rent. At various times decedent expressed his intention of deeding the property to Mrs. Preston and the unsigned deed was found among his effects after his death. It appears that during the last part of his life he was blind and very ill and was forbidden by his doctor to attend to any business, *Page 78 
but shortly before his death he said: "Don't let me forget to sign these deeds," meaning the deed to Mrs. Preston and one to his son, Lewis F. Harris. Mrs. Preston also, the testimony shows, expended about $5,000 on the improvement of the property. This undisputed testimony brings the case within the rule stated by Vice-Chancellor Backes in Roberts-Horsfield v. Gedicks,94 N.J. Eq. 82 (at p. 84), in which the learned vice-chancellor said:
"The transaction was a gift pure and simple, and under the circumstances above shown, is enforceable in equity. A parol gift of land is invalid, but when the gift is accompanied by possession, and the donee has been induced by the promise of the gift to make valuable improvements of a permanent nature, equity will enforce it. The principle is well settled; the doctrine is stated in 20 Cyc. 1200 and 12 R.C.L. 938, where many of the cases supporting it are cited."
The situation in regard to Lewis F. Harris is slightly different. He was living in the Madison house and left it pending divorce proceedings instituted by his wife. He lived at the home of decedent, his father. He was unable to comply with the decree awarding $250 a month alimony and counsel fee to his wife. He therefore suggested to his father that he should convey the property to him; that decedent should pay the alimony, and when the son could repay it that the house should be reconveyed. The alimony was subsequently reduced to $125 a month. A special account was opened in which some of the moneys paid by Lewis F. Harris to his father was deposited. In addition, decedent collected the rent from the property in reduction of his son's indebtedness, and after his death the executors continued to collect the rent. The son also turned over the furniture in the house, for which decedent obtained about $3,000. The father made advancements of about $3,600 and received a little more than that amount from his son. In his lifetime decedent indicated his intention and desire to reconvey the house to his son but his serious illness and death prevented the actual signing of the deed, which also was *Page 79 
found unsigned among his effects after his decease. It would seem, therefore, that the conveyance was in the nature of a mortgage. It was an absolute conveyance but there was no consideration except as I have stated. Therefore, the loan having been repaid, the son is entitled to a reconveyance. Papsco v.Novak, 94 N.J. Eq. 642.
I shall therefore advise a decree directing a conveyance of the Westfield property to Edith C. Preston, and a reconveyance of the Madison property to Lewis F. Harris.